UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JOHNNY DICKEY,

                    Plaintiff,

          v.

CAROLYN W. COLVIN,

                    Defendant.

NO:  15-CV-3070-FVS

REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ECF Nos. 18, 20

          BEFORE THE COURT are the parties' cross motions for summary

judgment.  ECF Nos. 18, 20.  This matter has been referred to the undersigned

magistrate judge for issuance of a report and recommendation.  ECF No. 23.  The

Court, having reviewed the administrative record and the parties' briefing, is fully

informed.  For the reasons discussed below, IT IS RECOMMENDED Plaintiff's

Motion (ECF No. 18) be GRANTED and Defendant's Motion (ECF No. 20) be

DENIED.

## JURISDICTION

          The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The

party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

1    At step four, the Commissioner considers whether, in view of the claimant's

2    RFC, the claimant is capable of performing work that he or she has performed in

3    the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is

4    capable of performing past relevant work, the Commissioner must find that the

5    claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of

6    performing such work, the analysis proceeds to step five.

7        At step five, the Commissioner considers whether, in view of the claimant's

8    RFC, the claimant is capable of performing other work in the national economy.

9    20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner

10   must also consider vocational factors such as the claimant's age, education and

11   past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of

12   adjusting to other work, the Commissioner must find that the claimant is not

13   disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to

14   other work, analysis concludes with a finding that the claimant is disabled and is

15   therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

16       The claimant bears the burden of proof at steps one through four above.

17   *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

18   step five, the burden shifts to the Commissioner to establish that (1) the claimant is

19   capable of performing other work; and (2) such work "exists in significant

20

numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title XVI supplemental security income on March 27, 2012, alleging an onset date of October 1, 2010.[1]  Tr. 229-34.  Benefits were denied initially, Tr. 153-61, and upon reconsideration.  Tr. 165-73.  Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on July 23, 2013.  Tr. 38-86.  On September 24, 2013, the ALJ denied Plaintiff's claim.  Tr. 13-37.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 27, 2012, the application date.  Tr. 18.  At step two, the ALJ found Plaintiff has the following severe impairments: cervical degenerative disc disease, degenerative changes of the thoracic spine, mild degenerative changes in

---

[1] Plaintiff filed a previous application for disability insurance benefits and supplemental security income on August 7, 2008.  At the time the ALJ's decision on the instant claim was issued, the previously filed case was pending before the United States District Court in the Eastern District of Washington.  Tr. 16.  Thus, as noted by the ALJ, the decision currently before the Court considers "whether the claimant was disabled at any time since March 27, 2012, the date he protectively filed the current application for supplemental security income."  Tr. 16.

the left shoulder joint, antisocial personality disorder, depression, polysubstance

dependence, and anxiety disorder.  Tr. 18.  At step three, the ALJ found that

Plaintiff does not have an impairment or combination of impairments that meets or

medically a listed impairment.  Tr. 21.  The ALJ then concluded that Plaintiff has

the RFC

> to lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit
> for about six hours and stand and/or walk for about six hours in an eight-
> hour day with regular breaks. The claimant has unlimited ability to push and
> pull within these exertional limits. He can occasionally climb ladders, ropes
> and scaffolds. The claimant can frequently stoop, kneel, crouch, and crawl.
> He has unlimited ability to balance and climb ramps and stairs. The claimant
> can occasionally reach overhead with both arms. He should avoid
> concentrated exposure to extreme cold, vibration and hazards. The claimant
> can understand, remember and carry out simple, routine as well as some
> complex and detailed tasks. He should work away from the general public.
> The claimant can have occasional contact with coworkers. He needs a
> routine and predictable work environment.

Tr. 23.  At step four, the ALJ found Plaintiff is unable to perform any past relevant

work.  Tr. 30.  At step five, the ALJ found that considering Plaintiff's age,

education, work experience, and RFC, there are other jobs that exist in significant

numbers in the national economy that the Plaintiff can perform, such as poultry

dresser, hand presser, and sanding machine tender.  Tr. 31-32.  The ALJ concluded

Plaintiff has not been under a disability, as defined in the Social Security Act, since

March 27, 2012, the date the application was filed.  Tr. 32.

On March 12, 2015, the Appeals Counsel denied review, Tr. 1-3, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 18.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly weighed Plaintiff's symptom claims;

2.  Whether the ALJ properly weighed the medical opinion evidence; and

3.  Whether the ALJ erred at step two by failing to find bipolar disorder was a severe impairment.

ECF No. 18 at 9.

## DISCUSSION

**A. Adverse Credibility Finding**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims.  ECF No. 18 at 21-24.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

"The claimant is not required to show that [his] impairment could reasonably be

expected to cause the severity of the symptom [he] has alleged; [he] need only

show that it could reasonably have caused some degree of the symptom." *Vasquez*

*v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted). "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

must make a credibility determination with findings sufficiently specific to permit

the court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony."). "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

924 (9th Cir. 2002)).

1    In making an adverse credibility determination, the ALJ may consider, *inter*

2    *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

3    claimant's testimony or between his testimony and his conduct; (3) the claimant's

4    daily living activities; (4) the claimant's work record; and (5) testimony from

5    physicians or third parties concerning the nature, severity, and effect of the

6    claimant's condition. *Thomas*, 278 F.3d at 958-59.

7    This Court finds the ALJ provided specific, clear, and convincing reasons

8    for finding that Plaintiff's statements concerning the intensity, persistence, and

9    limiting effects of his symptoms "are not entirely credible." Tr. 25.

10    *1. Lack of Objective Medical Evidence Regarding Physical Impairments*

11    Initially, the ALJ set out, in great detail, the medical evidence regarding

12    Plaintiff's physical impairments, and ultimately concluded that the "degree" of

13    disability Plaintiff has alleged is not "borne out" by the objective evidence of

14    record. Tr. 25. The ALJ specifically discussed medical evidence contradicting

15    Plaintiff's claims of disabling back, neck and shoulder pain. Tr. 25. As noted by

16    the ALJ, until 2012, medical records do not show Plaintiff complaining of neck,

17    shoulder, or back pain; and he received little treatment for the alleged pain between

18    2010 and 2013. Tr. 25. Multiple examinations in 2011 and 2012 indicated normal

19    range of motion; no motor or sensory deficits; normal gait; and normal strength in

20    all extremities. Tr. 350, 379, 399, 409. 486, 645, 903. In March 2013, Plaintiff

complained of neck pain but had normal range of motion of the neck; and had limited range of motion in his shoulder but his strength and sensation were normal. Tr. 924.  Claimant also sought treatment for neck pain later in March 2013; but in June 2013 an examination showed full, pain-free range of motion of Plaintiff's neck.  Tr. 912, 919.  The ALJ also correctly notes that the overall record is "inconsistent" with Plaintiff's testimony that he has significant limitations sitting. *See* Tr. 58.  Such inconsistencies between Plaintiff's alleged limitations and medical evidence provided a permissible reason for discounting Plaintiff's credibility.  *See Thomas*, 278 F.3d at 958-59 ("If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination … [t]he ALJ may consider testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which the claimant complains."); *see also Rollins*, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").  Plaintiff fails to challenge this reason in his briefing.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to address issue not raised with specificity in Plaintiff's briefing).  The Court notes that the ALJ's decision acknowledges objective evidence that could be

1  interpreted as favorable to the Plaintiff, including a diagnosis of degenerative joint

2  disease of the cervical spine; and x-rays of the right shoulder showing an absence

3  of the distal right clavicle and mild upward displacement of the distal clavicle.  Tr.

4  20, 854-55.  However, the medical evidence of record was susceptible to more than

5  one rational conclusion, and therefore the ALJ's conclusion as to the

6  inconsistencies between Plaintiff's alleged physical impairments, and the overall

7  record, must be upheld.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

8      *2.  Lack of Objective Medical Evidence Regarding Mental Impairments*

9        The ALJ found that, as with Plaintiff's physical limitations, the objective

10  evidence of record "does not show that [Plaintiff's] psychiatric symptoms are as

11  limiting as he has alleged and mental health treatment notes reflect few complaints

12  of depression or anxiety."  Tr. 25.  In support of this finding, the ALJ cited several

13  examinations from 2011 and 2012 indicating normal mood and affect.  Tr. 334,

14  351, 400.  The ALJ also cited reports from Plaintiff in 2012 and 2013 that he was

15  doing "pretty good," "really well, or "really good" (Tr. 525, 943, 1007); and a

16  determination in May 2012 that Plaintiff was doing well enough to stop therapy

17  and continue with medication services only (Tr. 515).  Tr. 26.

18        However, in January 2011, Plaintiff sought to resume "services for treatment

19  of Bipolar Disorder" and complained of continuing "racing and intrusive thoughts,

20  with agitation and mental confusion, on a daily basis."  Tr. 505.  In March 2011, he

1    reported isolating from others because he had trouble "getting along with people,"

2    and experiencing racing thoughts.  Tr. 597.  In May 2011, Plaintiff reported that

3    his anger was improving, but irritability remained high.  Tr. 586.  In June 2011, he

4    reported minimal anger and depressions, but experienced "significant mood swings

5    throughout the day."  Tr. 573.  In September and November 2011, Plaintiff stated

6    he was "about the same" and reported depression, anxiety, daytime sleepiness, and

7    obsessions.  Tr. 543, 548.  In January 2012, he reported depression, anxiety,

8    irritability, difficulty concentrating, lack of energy, obsessions, phobias, and

9    thoughts of harming others.  Tr. 537.  In April 2012, Plaintiff said he was "doing

10   worse" and endorsed depression, anxiety, irritability and difficulty sleeping.  Tr.

11   521.  He also stated that he was feeling scared and nervous to talk to people, which

12   caused him to isolate.  Tr. 524.  In June 2012, Plaintiff reported he was "doing

13   better" but still endorsed depression, anxiety, irritability and trouble sleeping; and

14   his medical provider observed him as "slightly" agitated and irritable, and

15   uncomfortable sitting still.  Tr. 512.  In April and May 2013, Plaintiff reported

16   anxious fearful thoughts, compulsive thoughts or behaviors, depressed mood,

17   manic episodes and sleep disturbance.  Tr. 880, 884, 888.  After reviewing the

18   overall record and noting the cyclical nature of Plaintiff's reported mental health

19   symptoms, the Court finds the ALJ's reasoning that the medical evidence does not

20   support the level of mental impairment claimed by Plaintiff was not clear,

1    convincing, and supported by substantial evidence.  However, this error is

2    harmless because, as discussed in detail in this section, the ALJ offers additional

3    reasons, supported by substantial evidence, for the ultimate adverse credibility

4    finding.  *See Carmickle*, 533 F.3d at 1162-63.

5        *3.  Failure to Follow Treatment Recommendations*

6        The ALJ also noted that Plaintiff was advised to go to physical therapy twice

7    in 2013 "but there is no evidence that he followed through with those

8    recommendations."  Tr. 25.  Unexplained, or inadequately explained, failure to

9    seek treatment or follow a prescribed course of treatment may be the basis for an

10    adverse credibility finding unless there is a showing of a good reason for the

11    failure.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).   However, an ALJ

12    "must not draw any inferences about an individual's symptoms and their functional

13    effects from a failure to seek or pursue regular medical treatment without first

14    considering any explanations that the individual may provide, or other information

15    in the case record, that may explain infrequent or irregular medical visits or failure

16    to seek medical treatment."  Social Security Ruling ("SSR") 96-7p at *7 (July 2,

17    1996), *available at* 1996 WL 374186.  The Court may decline to address this issue

18    as it was not raised with specificity in Plaintiff's opening brief.  *See Carmickle*,

19    533 F.3d at 1161 n.2.  Moreover, despite Plaintiff's somewhat vague testimony at

20    the July 2013 hearing that he was "scheduled" to start physical therapy again after

delays due to changes in insurance; he also testified that it had been "over a year" since he actually received physical therapy.  Tr. 59.  Thus, it was reasonable for the ALJ to consider Plaintiff's inadequately explained failure to follow treatment recommendations as a reason to discount his credibility.

### 4.  Daily Activities

The ALJ found that Plaintiff's reported activities were inconsistent with his allegations of disabling psychological and physical impairments.  Tr. 26.  First, as to his alleged mental health limitations, the ALJ noted that "[a]lthough the claimant reported problems with anger, irritability, and thinking people were talking about him, he has engaged in a variety of activities that entail dealing with other people."  Tr. 26.  Evidence about daily activities is properly considered in making a credibility determination.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  In support of this finding, the ALJ cited evidence that Plaintiff was dating during the relevant adjudicatory period, and at the time of the hearing was living with his girlfriend.  Tr. 26, 49.  Moreover, Plaintiff testified that he hung out with his AA sponsor and went to movies and the racetrack; and reported that he had chaired AA meetings.  Tr. 26, 66, 542.  Finally, the ALJ noted that Plaintiff was able to shop in stores; went to parks and the library; and attended church.[2]  Tr. 26,

_____

[2] The ALJ also relied on Plaintiff's alleged ability to live "in group clean and sober housing with no difficulty" during the adjudicatory period.  Tr. 26.  However, as

65, 67, 517.  Thus, the ALJ found Plaintiff's "ability to maintain his relationship with his girlfriend, go to AA meetings every day, attend church, and chair AA meetings is inconsistent with the degree of difficulty being around people he has alleged." Tr. 26.  It is well-settled that a claimant need not be utterly incapacitated in order to be eligible for benefits.  *Fair*, 885 F.2d at 603; *see also Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities … does not in any way detract from [his] credibility as to [the] overall disability.").  However, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.  Here, Plaintiff testified that he sometimes thought people were talking about him and became angry (Tr. 52); and he is careful who he "hang[s] around" because he starts getting on edge and "demanding space" with people that are not positive.  Tr. 60.  However, while evidence of Plaintiff's daily activities may be interpreted more favorably to the Plaintiff, the evidence is susceptible to more than one

---

noted by Plaintiff, he was kicked out of clean and sober housing at one point due to an altercation with another resident.  ECF No. 18 at 23 (citing Tr. 614, 1031).  Regardless, any error in considering this evidence was harmless because the ALJ provided additional reasons, supported by substantial evidence, for the adverse credibility finding.  *See Carmickle*, 533 F.3d at 1162-63.

1   rational interpretation, and therefore the ALJ's finding must be upheld.  *See Burch*,

2   400 F.3d at 679.

3        Second, as to his alleged physical limitations, the ALJ noted that Plaintiff

4   "remained active despite his physical and psychiatric complaints."  Tr. 27.

5   Specifically, the ALJ cited evidence of Plaintiff reporting going to the YMCA to

6   exercise, including lifting weights and using the treadmill, and riding his bicycle.

7   Tr. 27, 543, 556, 560, 573.  He testified that he had his fishing license, and likes

8   camping and rock hunting.  Tr. 67-68.  Particularly in light of Plaintiff's claims of

9   back, neck, and shoulder pain; and his alleged inability to sit for more than ten

10  minutes at a time (Tr. 58); it was reasonable for the ALJ to rely on inconsistencies

11  between Plaintiff's physical activities and his alleged physical limitations.

12       For all of the foregoing reasons, the ALJ properly relied on evidence of

13  Plaintiff's social and physical daily activities as a reason to discount his credibility.

14       *5. Exaggeration*

15       The ALJ noted "evidence that the claimant has exaggerated his psychiatric

16  difficulties."  Tr. 26.  In support of this finding, the ALJ primarily relied on the

17  results of two Personality Assessment Inventory ("PAI") tests administered in June

18  2012 and March 2013 that the ALJ found "suggested [Plaintiff] was exaggerating

19  his complaints and problems."  Tr. 26, 818, 832.  In March 2013, as cited by the

20  ALJ, the "test results potentially involve considerable distortion and are unlikely to

be an accurate reflection of [Plaintiff's] objective clinical status." Tr. 26, 837.

However, as noted by Plaintiff, the PAI also explicitly states that the information in

the report "should be viewed as only one source of hypotheses about the individual

being evaluated.  No decisions should be based solely on the information contained

in this report.  This material should be integrated with all other sources of

information in reaching professional decisions about this individual."  Tr. 832.

The PAI also indicates that these types of test results indicate a "cry for help" and

"there does not appear to be deliberate distortion of the clinical picture."  Tr. 837.

Moreover, Dr. Aaron Burdge reviewed these March 2013 test results as part of his

consultative examination, and while he attached the full results of the PAI test to

the evaluation, Dr. Burdge did not identify any evidence of exaggerated symptoms

in the results of the objective testing or the clinical interview.  *See* Tr. 846-48.  The

only other evidence offered by the ALJ to support this reasoning was two treatment

notes from April 2013 wherein Plaintiff's responses on the PHQ-9 resulted in

scores indicating "severe depression" and "moderately severe depression;" despite

simultaneous examination findings that Plaintiff's had euthymic mood and

appropriate affect.  Tr. 26 (citing Tr. 885, 889).  Again, the ALJ does not cite, nor

does the record contain, any finding by the respective medical provider that

Plaintiff was exaggerating his symptoms during these two visits.  Moreover, at

these visits Plaintiff was also noted to have only "fair" impulse control, judgment

and insight.  Regardless, it is inappropriate for the ALJ to substitute his or her own medical judgment for that of medical professionals.  *See Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999); *see also Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (ALJ "must not succumb to the temptation to play doctor and make [his or her] own independent medical findings").  For all of these reasons, the ALJ's reliance on Plaintiff's exaggeration of symptoms does not rise to the level of a clear and convincing reason, supported by substantial evidence, to discount his credibility.  However, this error is harmless because the ALJ offers additional reasons, supported by substantial evidence, to support the overall adverse credibility finding. *See Carmickle*, 533 F.3d at 1162-63.

### 6.  Job Seeking

The ALJ notes that Plaintiff cancelled two therapy sessions in 2011 because he had job interviews.  Tr. 27 (citing Tr. 558, 571).  The ALJ found that this evidence "indicates the claimant believed he could work if offered a job."  Tr. 27. Generally, a claimant's ability to work can be considered in assessing credibility. *Bray v. Comm'r, of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, Plaintiff's unsuccessful pursuit of employment, on only two occasions in June and July of 2011, does not establish that he has the physical or mental capacity to perform the work; nor is this reason supported by substantial evidence. *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (noting fact that claimant

sought employment "suggests nothing more than that he was doing his utmost, in spite of his health, to support himself."). This was not a clear and convincing reason to reject Plaintiff's symptom testimony. Regardless, this error is harmless because the ultimate credibility finding is adequately supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

### 7. Crime of Dishonesty

Finally, the ALJ noted that Plaintiff was in prison for burglary, and found that "history of a crime of dishonesty undermines his credibility." Tr. 27. It was proper for the ALJ to consider this factor in making the adverse credibility determination. *See Bunnell*, 947 F.2d at 346; *see also Hardisty v. Astrue,* 592 F.3d 1072, 1080 (9th Cir. 2010) (relying in part on a prior conviction when assessing credibility has a reasonable basis in law); *Albidrez v. Astrue*, 504 F.Supp.2d 814, 822 (C.D. Cal. 2007) (convictions for crimes of moral turpitude are proper basis for adverse credibility finding).

For all of these reasons, and having thoroughly reviewed the record, the Court concludes that the ALJ supported the adverse credibility finding with specific, clear and convincing reasons supported by substantial evidence.[3]

---

[3] As part of the credibility findings, the ALJ provides a details of Plaintiff's "extensive history of substance abuse" and repeated attempts to get "clean and sober." Tr. 27. However, neither party addresses this issue in their respective

**B. Medical Opinions**

Next, Plaintiff faults the ALJ for discounting various medical opinions.  ECF No. 18 at 10-21.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id.* (citations omitted).

---

briefing, nor does the ALJ appear to offer this as a reason to discount Plaintiff's credibility.  Thus, the Court declines to address the issue.  *See Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address issue not raised with specificity in Plaintiff's briefing).

1    If a treating or examining physician's opinion is uncontradicted, the ALJ

2    may reject it only by offering "clear and convincing reasons that are supported by

3    substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

4    "However, the ALJ need not accept the opinion of any physician, including a

5    treating physician, if that opinion is brief, conclusory and inadequately supported

6    by clinical findings." *Bray*, 554 F.3d at 1228 (internal quotation marks and

7    brackets omitted).  "If a treating or examining doctor's opinion is contradicted by

8    another doctor's opinion, an ALJ may only reject it by providing specific and

9    legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at

10    1216 (citing *Lester v. Chater,* 81 F.3d 821, 830–831 (9th Cir. 1995)).

11    The opinion of an acceptable medical source such as a physician or

12    psychologist is given more weight than that of an "other source." *See* SSR 06-03p

13    (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a).

14    "Other sources" include nurse practitioners, physician assistants, therapists,

15    teachers, social workers, and other non-medical sources.  20 C.F.R. §§

16    404.1513(d), 416.913(d).  The ALJ need only provide "germane reasons" for

17    disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111.  However, the

18    ALJ is required to "consider observations by nonmedical sources as to how an

19    impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d

20    1226, 1232 (9th Cir. 1987).

1    *1. State Agency Psychological Consultants (RFC)*[4]

2    In May 2012, state agency psychological consultant John D. Gilbert, Ph.D.

3    opined in narrative form that Plaintiff was "[a]ble to carry out simple and some

4    complex tasks at productive paces with [occasional] interruption of sustained

5    [concentration, persistence, and pace] as a result of [his] symptoms;" and would do

6    "best with routine, more predictable work environments." Tr. 130-31.  He also

7    noted Plaintiff's history of fighting and anti-social behavior, and opined that "work

8    away from the public and frequent coworker interaction would be best.  [Plaintiff

9    is] able to accept instructions but would struggle with more harsh criticism." Tr.

10   130.  In July 2012, Leslie Postovoit, Ph.D. assessed the exact same limitations as

11   part of the mental residual functional capacity assessment. Tr. 147-48.  The ALJ

12   assigned great weight to these opinions, because they were "supported by the

13   longitudinal record including the claimant's performance on mental status

14   examinations, his social life, and his daily activities." Tr. 29.

15   Plaintiff argues that even if the ALJ was correct in giving great weight to the

16   state agency psychologists, the ALJ erred by failing to include all of their assessed

17   ────────────────

[4] Plaintiff is arguing that the ALJ erred in assessing the RFC based on the amount

18   of weight assigned to the respective medical opinion evidence.  However, both

19   parties address this issue only as a part of the consideration of medical evidence.

20   Thus, the Court will do the same.

limitations in the RFC.  ECF No. 18 at 11-12.  The Court agrees.  A claimant's

RFC is what the claimant can still do despite his limitations.  *Smolen v. Chater*, 80

F.3d 1273, 1291 (9th Cir. 1996) (citing 20 C.F.R. § 404.1545(a)).  The ALJ found

Plaintiff had the RFC to "understand, remember and carry out simple, routine, as

well as some complex and detailed tasks.  He should work away from the general

public.  The claimant can have occasional contact with coworkers.  He needs a

routine and predictable work environment."  Tr. 23.  As argued by Plaintiff, the

RFC did not explicitly include occasional interruptions in concentration,

persistence, and pace; nor did it include a limitation on dealing with criticism.

Defendant argues that despite according their opinions great weight, the ALJ "was

not required to duplicate every facet of these opinions in the RFC.… Instead, the

ALJ was 'responsible for translating and incorporating clinical findings into a

succinct RFC.'"  ECF No. 20 at 12 (citing *Rounds v. Comm'r Soc. Sec. Admin.*,

807 F.3d 996, 1005-06 (9th Cir. 2015)).  However, *Rounds* is distinguishable from

the instant case because the opinions assessed by the state psychological

consultants in this case were formal narrative conclusions as to exactly how

Plaintiff was limited; as opposed to the separate "treatment recommendations"

addressed in *Rounds*.  *See* ECF No. 21 at 4 (citing *Rounds*, 807 F.3d at 1005-06).

    Thus, the ALJ erred by failing to include in the RFC, without explanation,

limitations clearly identified by the state agency consultants as part of their

narrative conclusions, including: occasional interruption of sustained

concentration, persistence, and pace; and struggle to accept harsh criticism.  *See*

Tr. 23, 130, 147.  This error cannot be considered harmless, particularly in light of

the testimony from the vocation expert that a person unable to perform 20 to 33

percent of the time[5] at a consistent pace without an unreasonable number and

length of rest periods would "result in termination."  Tr. 85-86; *see Molina*, 674

F.3d at 1115 (an error is harmless only when it is "inconsequential to the [ALJ's]

ultimate nondisability determination").  On remand, the ALJ must reassess the

RFC and, if necessary reconsider the hypothetical posed to the ALJ to ensure it

properly includes all of the Plaintiff's psychological limitations supported by

substantial evidence.  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001)

("[a]n ALJ is free to accept or reject restrictions in a hypothetical question that are

not supported by substantial evidence.").

### 2.  Caryn Jackson, M.D.

Dr. Caryn Jackson, Plaintiff's treating physician, filled out two separate

forms regarding Plaintiff's limitations.  On March 7, 2013, Dr. Jackson opined that

---

[5] This percentage, as described by Plaintiff, is based on "occasional" defined as an

"activity that occurs at least once up to one-third of an eight-hour workday."  ECF

No. 18 at 11 (citing POMS D25001.001, *available at*

https://secure.ssa.gov/poms.NSF/lnx/0425001001).

1    Plaintiff was limited to sedentary work for a period of twelve months.  Tr. 908.

2    The ALJ assigned no weight to this opinion for two reasons.  Tr. 29.  First, the ALJ

3    noted that Dr. Jackson "based her opinion, in part, on the claimant's complaint of

4    chronic right shoulder pain. However, the evidence does not establish a severe

5    right shoulder impairment."  Tr. 29.  Plaintiff correctly notes that an ALJ is

6    required to consider all of a claimant's impairments, regardless of severity, in

7    determining Plaintiff's RFC.  ECF No. 18 at 12-13; *see* 20 C.F.R. § 416.945(e).

8    Moreover, it is unclear how the ALJ's administrative finding regarding severity of

9    an impairment would be a proper reason to reject a treating physician's opinion.

10   Second, the ALJ found Dr. Jackson's opinion is inconsistent with Plaintiff's

11   "normal strength, normal gait, lack of neurological deficit, and his testimony that

12   he can carry three to four bags of groceries."  Tr. 29.  "[A]n ALJ may discredit

13   treating physicians' opinions that are conclusory, brief, and unsupported by the

14   record as a whole, or by objective medical findings."  *Batson v. Comm'r of Soc.*

15   *Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citations omitted).  Plaintiff

16   argues that Dr. Jackson examined Plaintiff "several times" after he complained of

17   neck, back, and shoulder pain, and viewed x-rays of his back.  ECF No. 18 at 13.

18   However, the x-rays referred to by Plaintiff were ordered on the same day as this

19   assessment form was completed, and therefore those objective findings could not

20   have been the basis for Dr. Jackson's March 7, 2013 opinion.  *See* Tr. 862-65.

1   Moreover, while Plaintiff correctly notes that it is unclear how occasionally lifting

2   grocery bags is inconsistent with a limitation to sedentary work (ECF No. 18 at

3   13); Plaintiff does not challenge the extensive evidence cited by the ALJ to support

4   the finding that that the sedentary limitation opined by Dr. Jackson is inconsistent

5   with the overall record, including findings of normal strength, normal range of

6   motion, normal gait, and lack of neurological deficit.  *See* Tr. 350, 379, 409, 486,

7   645, 903, 912, 919, 924, 928, 933-34.  This was a legitimate and specific reason to

8   reject Dr. Jackson's March 2013 opinion.  *See Burch*, 400 F.3d at 679 (ALJ's

9   conclusion must be upheld if evidence is susceptible to more than one rational

10  interpretation).

11        On July 8, 2013, Dr. Jackson opined that Plaintiff would miss four or more

12  days of work "on the average per month" due to pain.  Tr. 979.  She also indicated

13  that Plaintiff could perform at the sedentary exertional level; and had manipulative

14  limitations to the upper extremities, including: occasional handling and no reaching

15  with his right upper extremity, and frequent handling and reaching with the left

16  upper extremity.  Tr. 979.  Finally, Dr. Jackson opined that for "relief of pain"

17  Plaintiff needed to lie down for approximately half an hour to an hour per day.  Tr.

18  978.  The ALJ again granted this opinion no weight.  Tr. 29.  As with Dr.

19  Jackson's previous opinion, the ALJ initially found this opinion was inconsistent

20  with "objective findings" including normal range of motion, normal strength and

1  normal gait.  Tr. 29.  However, the ALJ fails to consider that between the March

2  2013 and May 2013 opinions, Dr. Jackson was able to review the results of

3  objective testing that indicated mild to moderate degenerative changes of the

4  cervical spine (Tr. 854); and absence of right distal clavicle and mild upward

5  displacement of the distal clavicle (Tr. 855).  Thus, as regards this later opinion,

6  the ALJ did not support this reason with substantial evidence.

7          Similarly, the ALJ found that Dr. Jackson relied "heavily" on Plaintiff's

8  subjective complaints, which are not entirely credible.  Tr. 29.  An ALJ may reject

9  a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that

10  have been properly discounted as incredible.  *Tommasetti v. Astrue*, 533 F.3d 1035,

11  1041 (9th Cir. 2008).  However, in this instance, Dr. Jackson specifically noted

12  that this opinion was based on her examination and clinical findings, and referred

13  to the notes from previous providers.  Tr. 980.  Neither the ALJ, nor the Defendant,

14  offer any evidence that Dr. Jackson relied "to a large extent" on Plaintiff's

15  subjective complaints as opposed to the clinical findings cited in her opinion.  This

16  was not a specific and legitimate reason to reject Dr. Jackson's opinion.

17          Finally, the ALJ noted that Plaintiff "has not received much treatment for his

18  orthopedic complaints since 2010, which further undermines Dr. Jackson's

19  opinion."  Tr. 29.  Although in some cases lack of treatment may reflect on a

20  claimant's credibility, it is unclear how a lack of medical treatment would reflect

on the reliability or appropriate weighting of a treating medical opinion.  Also, as

noted by Plaintiff, the record does include complaints and diagnoses of neck, back,

and shoulder pain during the relevant adjudicatory period.  ECF No. 18 at 14

(citing Tr. 651, 782, 862, 918-29, 1007); *see also* Tr. 880, 892, 900.  This was not

a specific and legitimate reason to reject Dr. Jackson's July 2013 opinion.

Based on the foregoing, the ALJ improperly rejected the July 2013 opinion

of Dr. Jackson by failing to cite specific, legitimate reasons supported by

substantial evidence.  At a minimum, the ALJ should reconsider Dr. Jackson's

March 2013, and in light of the objective testing obtained between Dr. Jackson's

two opinions, the ALJ may further develop the record by consultative examination

or testimony of a medical expert, if necessary.

### 3.  *Christopher Clark, M.Ed., LMHC*

In August 2011, Christopher Clark, M.Ed., LMHC completed a

psychological evaluation of Plaintiff.  Tr. 677-83.  Mr. Clark opined that Plaintiff

had marked limitations in his ability to: communicate and perform effectively in a

work setting with public contact or limited public contact; and maintain

appropriate behavior in a work setting.  Tr. 679.  He also opined that Plaintiff

would have moderate limitations in his ability to understand, remember, and persist

in tasks by following complex instructions of three or more steps; and perform

routine tasks without undue supervision.  Tr. 679.  Further, as noted by the ALJ,

"Mr. Clark opined that [Plaintiff's] social function was restricted to AA attendance

and working with a sponsor."  Tr. 28, 678.  The ALJ assigned no weight to Mr.

Clark's opinion.  Tr. 28.  Plaintiff argues the ALJ's reasons for assigning no weight

were legally insufficient.  ECF No. 18 at 18-19.  The Court agrees.

First, the ALJ found Mr. Clark's opinion was "inconsistent with the

treatment notes and the claimant's activities."  Tr. 28.  Specifically, the ALJ found

that

> Mr. Clark opined that the claimant was markedly limited with public contact
> and in maintaining appropriate behavior in a work setting.  However, at that
> time the claimant was attending AA meetings daily, starting to chair AA
> meetings, and maintaining his sobriety.  He opined that claimant's social
> function was restricted to AA attendance and working with a sponsor, but
> the claimant has a girlfriend and lives with her.

Tr. 28.  The consistency of a medical opinion with the record as a whole is a

relevant factor in evaluating that medical opinion.  *See Orn*, 495 F.3d at 631.  It

was reasonable for the ALJ to interpret evidence of Plaintiff's regular attendance at

AA meetings, and even acting as chair of some meetings, as inconsistent with Mr.

Clark's assessment of "marked" limitations both with public contact and his ability

to maintain appropriate behavior in the work setting.  *See Burch*, 400 F.3d at 679

(when the evidence is susceptible to more than one rational interpretation, the

ALJ's finding must be upheld).  However, the Court finds no inconsistency

1    between Mr. Clark's opinion that Plaintiff's "social function" was limited to AA

2    attendance and working with a sponsor in August 2011; and Plaintiff's testimony

3    almost two years later in July 2013 that he was living with his girlfriend.  *See* Tr.

4    49.  Overall, this was not a germane reason to reject Mr. Clark's opinion.

5          Second, the ALJ noted that Mr. Clark is not an acceptable medical source

6    and he was not treating the claimant.  Tr. 28.  Mr. Clark is a mental health

7    counselor, and thus in accordance with 20 C.F.R. § 416.913(a), the ALJ is correct

8    that he is not an "acceptable medical source."  Instead, Mr. Clark is an "other

9    source" as defined in 20 C.F.R. § 416.913(d).  However, the ALJ is required to

10   "consider observations by nonmedical sources as to how an impairment affects a

11   claimant's ability to work."  *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir.

12   1987).  Moreover, "[t]he fact that a medical opinion is from an 'acceptable medical

13   source' is a factor that may justify giving that opinion greater weight than an

14   opinion from a medical source who is not an 'acceptable medical source'….

15   However, depending on the particular facts in a case, and after applying the factors

16   for weighing opinion evidence, an opinion from a medical source who is not an

17   'acceptable medical source' may outweigh the opinion of an 'acceptable medical

18   source.'"  SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *5.  Thus,

19   while the ALJ may give less weight to Mr. Clark's opinion because it is not from

20   an "acceptable medical source;" it would be error to reject his opinion *solely* on

1    this basis.  In addition, as noted by Plaintiff, the fact that Mr. Clark was not

2    "treating" Plaintiff on an ongoing basis is not a valid reason to reject his opinion.

3    ECF No. 18 at 19 (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

4         Finally, the ALJ notes that Mr. Clark indicated Plaintiff's "only" symptom

5    was hypomania (Tr. 678), but "a report dated August 25, 2011, does not describe

6    the claimant as hypomanic and indicates his depression had improved (Tr. 554)."

7    Tr. 28.  As noted above, inconsistency with the overall medical record is a relevant

8    factor in evaluating a medical opinion.  *See Orn*, 495 F.3d at 631.  However, in

9    support of this finding, the ALJ references a single treatment note from August

10   2011 that "does not describe the claimant as hypomanic and indicates his

11   depression had improved."  Tr. 28 (citing Tr. 554).  As noted by Plaintiff, the

12   record "as a whole" includes ongoing reports and observations of both depression

13   mania across the adjudicatory period.  ECF No. 18 at 19; *see also* Tr. 500, 505,

14   512, 521, 532, 537, 543, 548, 568, 880, 884, 888.  Finally, the Court notes that this

15   was the sixth time Mr. Clark had assessed Plaintiff since 2006, and his description

16   of how the observed hypomania included the notation that this symptom affected

17   his ability to "maintain consistent work-like behavior [for] several years."  Tr. 678.

18   This was not a germane reason to reject Mr. Clark's opinion.

19        Based on the foregoing, the ALJ did not provide germane reasons to reject

20   Mr. Clark's opinion and it should be reconsidered on remand.

*4.  Laurie Jones, M.S., L.M.F.T.*

In June 2013, Laurie Jones, Plaintiff's treating medical provider, opined that Plaintiff had moderate, marked, and severe limitations.  Tr. 939-40.  Ms. Jones also opined that Plaintiff would be off-task over 30% of a 40-hour week schedule; and if he was attempting to work a 40-hour work schedule, he would likely miss four or more days per month.  Tr. 941.  The ALJ granted Ms. Jones' opinion no weight.  Tr. 28.  As an initial matter, the ALJ noted that Ms. Jones was not an acceptable medical source; and cited Plaintiff's testimony that he "was not very familiar with Ms. Jones and had only seen her around five times."  Tr. 28.  As noted in the previous section, while these are appropriate factors to consider when deciding how much weight to grant an opinion, they are not germane reasons, standing alone, to reject Ms. Jones' opinion.  *See* SSR 06-03p, *available at* 2006 WL 2329939 at *5; 20 C.F.R. §§ 404.1527(c), 416.927(c).

The ALJ additionally found that Ms. Jones did not "provide any rationale or cite any objective signs in support of the limitations she opined."  Tr. 28.  Similarly, the ALJ found that "the degree of functional limitation Ms. Jones opined is inconsistent with the claimant's performance on mental status examinations."  Tr. 28.  "[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings."  *Batson*, 359 F.3d at 1195.  The mental residual functional capacity assessment

1   form completed by the Ms. Jones is a check-box form without narrative

2   explanation or reference to objective findings to support her conclusion.  Plaintiff

3   correctly notes that an undetailed "check-box" form opinion can still be supported

4   by the overall record.  ECF No. 18 at 21 (citing *Burrell v. Colvin*, 775 F.3d 1133,

5   1140 (9th Cir. 2014) (finding ALJ erred in rejecting "check-box" form opinion

6   because it was supported by the overall record, including "extensive treatment

7   notes" from the opining medical provider).  However, the ALJ in this case

8   additionally found that the severity of Ms. Jones' opined limitations was

9   inconsistent with Plaintiff's performance on mental status exams.  Tr. 28, 816-17,

10  852-53, 885, 889.  Ms. Jones administered several mental status examinations that

11  found Plaintiff's appearance was appropriate; he was oriented to person, place,

12  time and situation; psychomotor behaviors were unremarkable; speech was

13  appropriate; affect was appropriate; attitude was cooperative; thought processes

14  were logical; and thought content was unremarkable.  Tr. 885, 889; *See Bayliss*,

15  427 F.3d at 1216 (discrepancy between treating provider's opinion and that

16  provider's clinical notes justified rejection of opinion).  These mental status

17  examinations also found that Plaintiff's reasoning, impulse control, and judgment

18  were "fair;" and the patient health questionnaire (PHQ-9) revealed "moderately

19  severe" and "severe" depression.  Tr. 885, 889.  However, while the evidence

20  could be interpreted more favorably to Plaintiff, it is susceptible to more than one

interpretation, and therefore the ALJ's conclusion must be upheld.  *See Burch*, 400

F.3d at 679.  The ALJ provided germane reasons to reject Ms. Jones' opinion.[6]

## C. Step Two

Plaintiff contends the ALJ erred by failing to find bipolar disorder was a

severe impairment at step two.[7]  ECF No. 18 at 15-17.

---

[6] The ALJ also found that the degree of limitation assessed by Ms. Jones was

inconsistent with Plaintiff's "actual functioning as evidenced by his activities."  Tr.

28.  An ALJ may discount a medical source opinion to the extent it conflicts with

claimant's report of daily activities."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169

F.3d 595, 601-02 (9th Cir. 1999).  However, when explaining his reasons for

rejecting medical opinion evidence, the ALJ must do more than state a conclusion,

rather, the ALJ must "set forth his own interpretations and explain why they, rather

than the doctors', are correct."  *Reddick*, 157 F.3d at 725.  Here, the ALJ failed to

identify with any specificity how attending AA meetings and maintaining his

sobriety contradicts the functional limitations on performing "work-related

activities" as assessed by Ms. Jones.  Regardless, this error was harmless because

the ALJ provided additional germane reasons for rejecting Ms. Jones' opinion.  *See*

*Carmickle*, 533 F.3d at 1162-63.

[7] In his opening brief, Plaintiff includes this argument as a sub-heading under his

challenge to the ALJ's consideration of the medical opinion evidence.  ECF No. 18

To be considered 'severe' at step two of the sequential analysis, an impairment must significantly limit an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Smolen*, 80 F.3d at 1290. An impairment that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities. SSR 96-3P, 1996 WL 374181 at *1 (July 2, 1996). Basic work activities include, *inter alia*, understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

Plaintiff bears the burden to establish the existence of a severe impairment or combination of impairments, which prevent him from performing substantial gainful activity, and that the impairment or combination of impairments lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505, 404.1512(a); *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2011). However, step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. "Thus, applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find

at 15. However, as clarified in his reply brief, it is more appropriately considered as an error at step two of the sequential analysis. *See* ECF No. 21 at 4-6.

that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the ALJ found that bipolar was not a severe impairment at step two because it "[had] not been established by appropriate medical evidence." Tr. 19. Specifically, the ALJ noted that Dr. Jackson "has not explained the basis for the … bipolar disorder diagnosis," and therefore "[i]t is unclear if [the] diagnosis [was] based on the diagnoses from Kathleen Mack, A.R.N.P., who is not an acceptable medical source." Tr. 19. As correctly noted by Defendant, evidence from an acceptable medical source is required to establish a medically determinable impairment, thus, Ms. Mack's opinion as a nurse practitioner, standing alone, would not be sufficient to establish a medically determinable impairment. ECF No. 20 at 20 (citing SSR 06-03p). However, as argued by Plaintiff, the ALJ fails to consider the diagnosis by Dr. Jackson due to the mere *possibility* that it was solely based on Ms. Mack's diagnosis; and the ALJ fails to consider the additional diagnoses of bipolar by acceptable medical source Dr. Lou Sowers, and "probable" bipolar by Dr. Robert Capes. ECF No. 18 at 15 (citing Tr. 788, 792, 862). Moreover, Plaintiff correctly notes that the ALJ erred by finding that records from Yakima Neighborhood Health Services "do not list bipolar disorder" as a "chronic problem." Tr. 20. Treatment notes from Yakima Neighborhood Health Services,

1   including records from treating physician Dr. Jackson, include multiple notations

2   of bipolar disorder as a "chronic problem" or part of an "assessment plan."  Tr.

3   468, 472, 476, 479, 484, 488, 862, 892.

4        However, even assuming, *arguendo*, that substantial evidence did not

5   support the ALJ's finding that bipolar disorder was not a severe impairment at step

6   two; any error is harmless if the ALJ continues beyond step two and considers

7   relevant limitations at step four.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir.

8   2007).  Here, the ALJ specifically found that even if bipolar disorder was a

9   medically determinable impairment, it would not "warrant greater restrictions than

10  determined in this decision based on the evidence of record."  Tr. 20.  Plaintiff

11  argues that the ALJ's error at step two was not harmless because the "failure to

12  find that bipolar was a severe impairment led the ALJ to reject [Plaintiff's]

13  symptom testimony and find medical sources were not reliable because at times he

14  exhibited no symptoms of depression, even though bipolar disorder is

15  characterized by symptoms that wax and wane, fluctuating between depression and

16  mania."  ECF No. 21 at 5-6.  This argument is speculative.  The ALJ did find

17  depression, antisocial personality disorder, and anxiety disorder were severe

18  impairments at step two.  As argued by the Defendant, Plaintiff does not indicate

19  how bipolar disorder, specifically, resulted in limitations beyond those included in

20  the assessed RFC.  ECF No. 20 at 20-21.  Thus, any error in the ALJ's finding that

bipolar disorder was not a severe impairment at step two was harmless.  However, as discussed in detail above, the ALJ erred in considering the medical opinion evidence and assessing the RFC.  Thus, on remand, if may be necessary for the ALJ to reconsider whether bipolar disorder is a severe impairment at step two.

## CONCLUSION

The ALJ's decision was not supported by substantial evidence and free of legal error.  Remand is appropriate when, like here, a decision does not adequately explain how a conclusion was reached, "[a]nd that is so even if [the ALJ] can offer proper post hoc explanations for such unexplained conclusions," for "the Commissioner's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."  *Barbato v. Comm'r of Soc. Sec.,* 923 F.Supp. 1273, 1276 n. 2 (C.D.Cal.1996) (citations omitted).  On remand, the ALJ should reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating these opinions, supported by substantial evidence.  If necessary, the ALJ should order additional consultative examinations and/or take additional testimony from medical and psychological experts.  It may be necessary for the ALJ to reconsider the step two findings.  Finally, the ALJ should reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

**ACCORDINGLY, IT IS HEREBY RECOMMENDED:**

1.   Plaintiff's Motion for Summary Judgment, ECF No. 18, be **GRANTED**; and the matter remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. § 405(g).

2.   Defendant's Motion for Summary Judgment, ECF No. 20, be **DENIED**.

## OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within **fourteen (14)** days following service with a copy thereof. Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor. Any response to the objection shall be filed within **fourteen (14)** days after receipt of the objection. Attention is directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject or modify the magistrate judge's determination. The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon. The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C.

§ 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMR 4, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to enter this Report and Recommendation, forward a copy to Plaintiff and counsel, and **SET A CASE MANAGEMENT DEADLINE ACCORDINGLY.**

DATED August 18, 2016.

<u>s/Mary K. Dimke</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE
